UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOM DJONOVIC and
JOHN KELMENDI,

      Plaintiffs,                 Case No.  2:22-cv-12393
                                     District Judge Mark A. Goldsmith
v.                              Magistrate Judge Kimberly G. Altman

CAROL SEPTER, GUARESIMO,
SHELBY TOWNSHIP, JOHN
DOE 1, and JOHN DOE 2,

      Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF Nos. 36, 37)[1] [2]

### I.      Introduction

This is a civil rights case.  Plaintiffs Tom Djonovic (Djonovic) and John Kelmendi (Kelmendi), proceeding *pro se*, filed a complaint against Shelby Township (the Township); Carol Septer (Septer), a Township code enforcement officer; Guaresimo, a Township police officer; and two John Does, both Township police officers, alleging harassment and retaliation for a prior lawsuit plaintiffs

---

[1] The undersigned informed the parties on November 21, 2023, that the motion would be decided without oral argument.  (ECF No. 52).

[2] Defendants filed a motion to dismiss on July 26, 2023, (ECF No. 36), and then filed a corrected version of the motion the next day, (ECF No. 37).

filed.  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 51).

Before the Court is a motion to dismiss jointly filed by all named defendants.  (ECF No. 37).  The motion is fully briefed, (ECF Nos. 37, 39, 44, 45), and ready for consideration.  For the reasons set forth below, it is RECOMMENDED that the motion be GRANTED, and the case be dismissed. The named defendants should be DISMISSED WITH PREJUDICE and the John Doe defendants should be DISMISED WITHOUT PREJUDICE.

## II.    Background

### A.    Companion Case

As previously mentioned, plaintiffs believe defendants' actions in this matter were motivated by a prior lawsuit that they filed which is still pending in this district.  That lawsuit is *Kelmendi v. Hogan*, *et al.*, No. 20-cv-12354 (E.D. Mich., Goldsmith, J), which is a civil rights case under 42 U.S.C. § 1983.

In *Kelmendi*, the plaintiffs are Kelmendi individually and Djonovic as personal representative of the Estate of Prela Djonovic (Prela),[3] and they assert claims arising under the Fourth and Fourteenth Amendments against T. Hogan (Hogan) as well as a *Monell* claim against the Township.  In broad terms, the

_____

[3] Prela is referred to by his first name because he and Djonovic share the same last name.

2

plaintiffs allege that Hogan and other Township police officers illegally entered Prela's home and used excessive force against Kelmendi, Djonovic, and Prela. Prela died allegedly as a result of the injuries that he sustained during this incident.

B.      Complaint

The following facts are gleaned from the complaint.

Plaintiffs allege that they began being harassed by Septer in the summer or fall of 2020, after they filed the original complaint in *Kelmendi*. (ECF No. 1, PageID.4, 7-8). Septer visually inspected plaintiffs' real property to discover possible ordinance violations and then wrote tickets for those violations. (*Id.*, PageID.6). She also called Macomb County Animal Control and falsely reported that a dog on the property was "being mistreated, abused and malnourished." (*Id.*).

When a Macomb County sergeant came out to investigate, he saw that the dog was healthy and loved. (*Id.*, PageID.6). He did not find any violations but told plaintiffs to get the dog's vaccinations up-to-date and renew their dog license. (*Id.*, PageID.6-7). Upon finding the dog in good health, the sergeant reportedly said, "Somebody at Shelby Twp. doesn't like you very much!" (*Id.*, PageID.7 (capitalization modified)).

Township police officers also came to plaintiffs' property to investigate reports of the dog barking. (*Id.*, PageID.8-9). In total, Township police officers came to plaintiffs' property six to seven times, including two or three times in the

3

middle of the night to investigate these complaints. (*Id.*, PageID.8). Officers also called plaintiffs at times to inform them that the dog was barking. (*Id.*, PageID.9). Plaintiffs say that the dog was not barking (unlike the dogs of their neighbors) because the dog was muzzled at night. (*Id.*).

Ultimately, at or around 11 p.m. on October 7, 2020, three Township police officers arrived at the property dressed in SWAT gear and carrying long guns. (*Id.*, PageID.10). The officers pounded on the door without identifying themselves as police. (*Id.*). When asked who they were, an officer said he "was going to get a warrant to arrest [Djonovic] and take the dog!" (*Id.*).

For this incident, Djonovic was charged with a misdemeanor "for a claim of the [d]og barking too [l]oudly." (*Id.*, PageID.11). He says that he was sentenced to six months of probation even though he was "never arrested, never fingerprinted, and [his] liberty and freedom [was] restricted for no reason at all!!" (*Id.* (capitalization modified)).

As for the other ordinance violations, some concerned vehicles and vehicle parts that plaintiffs stored on their property out of public view. (*Id.*, PageID.7). They had been storing vehicles and parts in this manner "for at least 25 years," and had never received any complaints before filing their first lawsuit. (*Id.*). Eventually plaintiffs agreed to move the stored vehicles; however, two to three days before they planned to do so, a snowstorm occurred. (*Id.*, PageID.12). The

snowstorm delayed plaintiffs in moving the last four or five vehicles. (*Id.*).

Plaintiffs' attorney tried to negotiate a last-minute extension with counsel for the

Township. (*Id.*, PageID.12-13). Counsel seemingly agreed on the condition that

Septer approved of the extension. (*Id.*). Septer did not. (*Id.*, PageID.13).

Plaintiffs contacted a tow truck company and arranged three tow trucks to come to

the property the next morning. (*Id.*).

The next morning, eight to nine Township police cars came to the property

and blocked the driveway. (*Id.*). The police officers told the tow truck drivers to

leave and that they would not be permitted to remove the remaining vehicles. (*Id.*,

PageID.14). The Township then towed the vehicles and charged plaintiffs the

resulting storage and tow fees of approximately $3,000. (*Id.*).

After the vehicle incident, plaintiffs received a notice from the Township to

remove blocks and bricks from their property. (*Id.*, PageID.15). Plaintiffs had

purchased the materials to build a new garage on the property. (*Id.*). Because of

the notice, plaintiffs had to rent a dumpster to dispose of the materials. (*Id.*).

Septer, another inspector, and a police sergeant came to the property and approved

of plaintiffs' plans to dispose of the materials. (*Id.*, PageID.15-16).

Two to three months later, Septer and seven to eight Township police cars

filled with officers came to the property. (*Id.*, PageID.16). The officers were

wearing SWAT gear and bullet proof vests. (*Id.*). Septer wanted to cut down trees

5

and remove licensed vehicles. (*Id.*, PageID.16-17). Djonovic convinced the sergeant in charge of the scene to have everyone leave the property. (*Id.*, PageID.17).

Plaintiffs allege that all of the above was done out of retaliation for them filing the first lawsuit and that defendants intended to harass and intimate them, causing emotional and mental anguish as well as anxiety. (*Id.*, PageID.18).

### III.   Motion to Dismiss Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The

plausibility of an inference depends on a host of considerations, including common

sense and the strength of competing explanations for the defendant's conduct."

*16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir.

2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## IV.    Discussion

Defendants move to dismiss all of plaintiffs' claims for a variety of reasons.

Ultimately, the undersigned finds that each claim should be dismissed for one or

more, but not all, of the reasons asserted by defendants.

### A.    Standing and the Statute of Limitations

Defendants argue that Kelmendi lacks standing because "none of the actions

7

underlying [plaintiffs'] lawsuit were directed at [ ] Kelmendi and none injured

him." (ECF No. 37, PageID.289). It appears that this argument is based upon

defendants' belief that the incidents outlined in the complaint all involved

Djonovic and not Kelmendi. Although the complaint is unclear with regard to who

owns the property and who was present during various interactions with defendants

and other law enforcement officers, in the interests of construing the *pro se*

complaint liberally, the undersigned does not recommend dismissing Kelmendi as

a plaintiff for lack of standing. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94

(2007) ("A document filed *pro se* is to be liberally construed and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." (cleaned up)). The allegations in the

complaint, which must be accepted as true at this stage of proceedings, could have

involved either or both plaintiffs. *Keys*, 684 F.3d at 608. Further, as will be

explained, the complaint is subject to dismissal for other reasons.

Defendants also argue that the statute of limitations bars any "claims based

on conduct preceding 10/7/2019." (*Id.*, PageID.287). Even if true, this argument

is irrelevant because plaintiffs state in their complaint that the issues underlying

their claims began *in the summer of 2020*. (ECF No. 1, PageID.4, 7-8). Thus,

there do not appear to be any claims barred by application of the statute of

limitations. Therefore, dismissal is not recommended on this ground.

B.    Criminal Statutes

Plaintiffs appear to be attempting to state claims under 18 U.S.C. § 241 (conspiracy), 18 U.S.C. § 242 (deprivation of rights), and 34 U.S.C. § 12601 (unlawful conduct by law enforcement officers).  These are all criminal statutes. Defendants argue that these criminal statutes do not confer private rights of action. The undersigned agrees.

The Supreme Court "ha[s] been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).  The Sixth Circuit has also long recognized that "the general rule is that a private right of action is not maintainable under a criminal statute."  *Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973). Further, courts have specifically held that no private rights of action exist under the three specific statutes at issue here.  *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("Finally, the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes."); *Grose v. City of Bartlett, Tenn.*, 2:20-cv-02307-TLP-cgc, 2023 WL 6606961, at *10 (W.D. Tenn. Aug. 11, 2023) (recommending dismissal of claims brought under 18 U.S.C. § 241, 18 U.S.C. § 242, and 34 U.S.C. § 12601 because "none of these statutes create a private right of

action"), *report and recommendation adopted*, 2023 WL 6294189 (W.D. Tenn. Sept. 27, 2023).

Plaintiffs offer no argument to the contrary.  Accordingly, plaintiffs' claims purportedly brought under 18 U.S.C. § 241, 18 U.S.C. § 242, and 34 U.S.C. § 12601 should be dismissed because these criminal statutes do not provide private causes of action.

### C.   Constitutional Claims

#### 1.   Parties' Arguments

In construing the complaint liberally, defendants suggest that plaintiffs could be attempting to bring claims under 42 U.S.C. § 1983 for violations of their rights under the First and Fourth Amendments.  Specifically, defendants suggest that plaintiffs may have attempted to plead claims of retaliation (First Amendment), unlawful entry and seizure of property (Fourth Amendment), and malicious prosecution (Fourth Amendment) as well as *Monell* claims against the Township. Defendants argue that plaintiffs have failed to adequately plead any of these claims and also that their claims for retaliation and malicious prosecution are barred by the doctrines of res judicata and/or collateral estoppel.

In their first response, plaintiffs reference the Fourteenth Amendment, *Monell*, and false arrest.  (ECF No. 39, PageID.743).  In their second response, plaintiffs reference retaliation, false arrest, violation of their rights under the Fourth

and Fourteenth Amendments and argue that defendants "were acting pursuant to the customs, policies, and/or practices of the" Township.  (ECF No. 45, PageID.769, 771-773, 775-776).  Plaintiffs do not respond to defendants' arguments that the claims are barred by the doctrines of res judicata and/or collateral estoppel, nor do they attempt to explain how the allegations in the complaint satisfy the elements of any of the aforementioned claims.  As such, plaintiffs have arguably waived opposition to defendants' arguments in favor of dismissal.  *See Frazier v. Comm'r of Soc. Sec.*, No. 19-cv-11097, 2020 WL 1856202, at *10 (E.D. Mich. Mar. 11, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."), *adopted sub nom. Frazier v. Saul*, 2020 WL 1847923 (E.D. Mich. Apr. 13, 2020).  Nonetheless, the undersigned will explain below why plaintiffs' claims should also be dismissed on the merits of defendants' arguments.

### 2.     Potential Claims

#### a.     Retaliation

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (quoting

11

*Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Even if the undersigned found that plaintiffs have adequately pled elements one and two, they have not adequately pled element three.

"[T]o prove causation it is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured."  *Coleman v. Mohlman*, No. 2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing *Nieves*, 139 S. Ct. at 1722).  "The retaliatory motive must be a 'but-for' cause to the adverse action."  *Id.*

Here, plaintiffs have not sufficiently pled that any of the individual defendants even knew that plaintiffs filed a prior lawsuit involving the Township and other law enforcement officers.  If defendants were unaware of the lawsuit, then they could not have acted with retaliatory motives.  Further, in state court

proceedings, Djonovic pled "responsible" to civil infraction violations involving the vehicle storage issue, (ECF No. 37-2, PageID.666-667, 698-700), and nolo contendere to animal control violations, (ECF No. 41-1, PageID.764).[4]  Thus, even if defendants' motivations were in some part retaliatory, Djonovic's pleas establish that there were valid reasons for the issuance of ordinance violations and the prosecution of the same.  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) ("[W]here there is probable cause to file a criminal complaint, a plaintiff will be unable to prevail on retaliation claim."); *Fannon v. Patterson*, No. 3:13-CV-14, 2014 WL 4273337, at *4 (S.D. Ohio Aug. 29, 2014) (finding that the plaintiff's "First Amendment retaliation claim must fail in light of the fact that he was convicted of certain offenses in the underlying traffic and criminal cases after entering guilty pleas in exchange for the dismissal of the remaining charges").  Thus, plaintiffs' claim for retaliation should be dismissed.

      b.    Unlawful Entry and Seizure of Property and False Arrest

Turning first to unlawful entry and seizure of property,

[t]he Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant supported

---

[4] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Accordingly, the undersigned may consider the state court records attached to defendants' motion and reply.

by probable cause.  Yet the Fourth Amendment permits warrantless searches with valid consent.  To be valid, the consent must be voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.

*Little v. Saginaw*, ___ F. Supp. 3d ___, ___, No. 1:21-cv-11104, 2023 WL 3571916, at *3 (E.D. Mich. May 19, 2023) (internal quotation marks and citations omitted).

Here, as part of Djonovic's responsible plea to violations involving vehicle storage, the Township was granted authority to enter the property and to catalog and remove any unlicensed and inoperable vehicles.  (ECF No. 37-2, PageID.667).  As such, Djonovic consented to warrantless entry of the property and the seizure of any unlicensed and inoperable vehicles.  Thus, to the extent pled, the claim for unlawful entry and seizure of property should be dismissed.

As to false or unlawful arrest, "[g]enerally speaking, 'an arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority. . . .  An assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest.' "  *United States v. Saari*, 88 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).  Here, the parties do not seem to dispute that neither plaintiff was ever arrested.  Instead, it appears that Djonovic was charged with a misdemeanor for animal control violations and ordered to appear in court.  Thus, plaintiffs' claim for false or unlawful arrest should be dismissed.

14

c.      Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must plead that

(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the prosecution, the plaintiff suffered a deprivation of liberty, as understood in Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 631 (6th 2014).

Plaintiffs have failed to plead any of these four elements. For instance, they do not plead that the individual defendants were involved in the decision to prosecute Djonovic. Further, none of the proceedings resolved in Djonovic's favor because, as explained above, he pled either responsible or nolo contendere to the various charges. Thus, plaintiffs' claims for malicious prosecution should be dismissed.

3.      Relitigation of Issues

Defendants argue that Djonovic's pleas in state court preclude him from raising related claims in this Court under the doctrines of res judicata and/or collateral estoppel. While the undersigned agrees that plaintiffs cannot relitigate these issues, the more applicable doctrine is *Rooker-Feldman*.

The *Rooker-Feldman* doctrine is based on the principle that a federal district court does not have appellate jurisdiction to review a state court judgment because that power is reserved to the Supreme Court under 28 U.S.C. § 1257. *See Exxon*

15

*Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 292 (2005).  In *Exxon Mobil*, the

Supreme Court held that "[t]he *Rooker-Feldman* doctrine . . . is confined to cases

of the kind from which the doctrine acquired its name: cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and

rejection of those judgments."  *Id.* at 284.  "The pertinent question in determining

whether a federal district court is precluded under the *Rooker-Feldman* doctrine

from exercising subject-matter jurisdiction over a claim is whether the source of

the injury upon which plaintiff bases his federal claim is the state court judgment."

*In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (internal quotation marks and

citations omitted).  Here, one of the sources of injuries complained of by plaintiffs

are the penalties imposed in state court for Djonovic's ordinance and criminal

violations.  *See Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014).  Thus, to

the extent that plaintiffs seek relief for injuries caused by the state court judgments,

the *Rooker-Feldman* doctrine applies and bars their claims.

### 4.     *Monell* Claim

Liability under § 1983 must be based on more than merely the right to

control employees.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v.

New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  Only when the

acts of individual employees represent a municipal custom or policy can a

16

municipal defendant be held liable for the underlying acts. *Monell*, 436 U.S. at 690-92. Such a claim can be made where a plaintiff alleges one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (citation omitted).

Here, plaintiffs have not alleged any of the above. At best, they have pled that the individual defendants are Township employees and that as such the Township is responsible for their actions. However, as previously stated, the right to control employees is not enough to state a *Monell* claim against a municipality. *Dodson*, 454 U.S. at 325-26; *Monell*, 436 U.S. at 694-95. Thus, plaintiffs' claims against the Township should be dismissed.

### D.   State Law Claims

#### 1.   Jurisdiction

Defendants suggest that plaintiffs' complaint could be liberally construed as attempting to assert various state law claims including for excessive force and/or battery and intentional infliction of emotional distress and/or harassment.

Under 28 U.S.C. § 1367(c), this Court "has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." "This

discretion is guided by considerations of judicial economy, avoiding multiplicity of

litigation, and avoiding unnecessarily deciding state law issues." *Gardner v. Mich.*

*State Univ. Bd. of Trs.*, No. 1:12-cv-1018, 2014 WL 558818, at *7 (W.D. Mich.

Feb. 11, 2014) (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182

(6th Cir. 1993)).  However, federal retention of state-law claims may be prudent

where the claims are "clearly without merit" or "patently frivolous," or when "it is

absolutely clear how the pendent claims can be decided." *Martin v. Detroit*

*Prosecutor's Off.*, No. 06-CV-12155, 2007 WL 851307, at *4 n.2 (E.D. Mich.

Mar. 20, 2007).

    For the reasons below, the undersigned finds it absolutely clear that

plaintiffs' state-law claims should be dismissed, and therefore recommends

exercising supplemental jurisdiction over them and dismissing them with

prejudice.  In the alternative, the district court judge may choose to decline

exercising jurisdiction over these claims.

### 2. Excessive Force and/or Battery

    Defendants address a potential claim for excessive force and/or battery.

Under Michigan law, "[a] battery is 'an unintentional, unconsented and harmful or

offensive touching of the person of another, or of something closely connected

with the person.' " *Grawey v. Drury*, 567 F. 3d 302, 315 (6th Cir. 2009) (quoting

*People v. Nickens*, 470 Mich. 622, 685 N.W.2d 657, 661 (2004)).

> Generally, under Michigan law a police officer may use such force as is reasonably necessary to perform his official duties such as, for example, making an arrest or subduing a person suspected of committing a crime. If a police officer uses force that is objectively reasonable under the circumstances, the officer's actions are "justified" and he does not commit an assault and battery. However, if a police officer uses excessive force or more force than is reasonably necessary, his conduct is not justified (not objectively reasonable) and he may be individually liable for assault and battery.

*Moher v. United States*, 875 F. Supp. 2d 739, 760 (W.D. Mich. 2012).

As explained above, neither defendant was ever arrested and upon a careful review of the complaint, the undersigned finds that no allegations remotely imply that either plaintiff was ever touched by a defendant. Accordingly, to the extent pled, plaintiffs' claim for battery and/or excessive force should be dismissed.

3. Intentional Infliction of Emotional Distress and/or Harassment

Defendants suggest that plaintiffs' complaint could be liberally construed as attempting to assert claims for intentional infliction of emotional distress and/or harassment.

> Under Michigan law, the elements of intentional infliction of emotional distress ("IIED") are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe.

*Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669 (E.D. Mich. 2015). "Sufficient proof must be adduced of intentional infliction and something much more than

simply aggravation must be shown to make out a case of emotional distress."
*Bhama v. Bhama*, 169 Mich. App. 73, 425 N.W.2d 733, 736 (1988).

Plaintiffs allege that Septer began harassing them in the summer of 2020
after they filed their first lawsuit.  However, even if true, her actions cannot be said
to be extreme and outrageous.  To satisfy the first element of an intentional
infliction of emotional distress claim, a defendant's conduct must be "regarded as
atrocious and utterly intolerable in a civilized community, such that lead the
average member of the community to exclaim, 'Outrageous!' "  *Williams v. AK
Steel Corp.*, No. 18-11485, 2020 WL 2836287, at *13 (E.D. Mich. May 31, 2020)
(internal quotation marks omitted).  Septer's alleged conduct here does not meet
this high standard.  For one, Djonovic pled responsible to the ordinance violations
found by Septer, which suggests that any harassment of plaintiffs was merely
incidental to the performance of her job duties.  Thus, to the extent pled, plaintiffs'
claims for intentional infliction of emotional distress should be dismissed.

### D.    John Doe Defendants

Plaintiffs' only remaining claims are against two John Doe police officers.
However, these individuals have not been identified or served with the complaint.
Under Federal Rule of Civil Procedure 4(m), plaintiffs had ninety days from the
filing of the complaint to serve each defendant.  They have failed to serve John
Does; therefore, both John Does should be dismissed as well.  *See Porter v.*

*Nationstar Mortg. Servs.*, No. 215CV02578SHMEGB, 2017 WL 2493150, at *2 (W.D. Tenn. June 9, 2017).  Further, dismissal of unknown defendants without prejudice is proper where, such as here, no claims remain against named defendants.  *See Ruff v. Corr. Med. Servs.*, No. 07-15443-BC, 2009 WL 1384158, at *1 (E.D. Mich. May 13, 2009) (citing *Haddad v. Fromson,* 154 F. Supp. 2d 1085, 1093 (W.D. Mich. 2001); *Adams v. Hyman Lippitt, P.C.*, No. 05–72171, 2007 WL 2571955, at *1 (E.D. Mich. Sept. 5, 2007)).

V.    Conclusion

For the reasons stated above, it is RECOMMENDED that the motion to dismiss, (ECF No. 37), be GRANTED, and the case be dismissed.  The named defendants should be DISMISSED WITH PREJUDICE and the John Doe defendants should be DISMISED WITHOUT PREJUDICE.

Dated: January 11, 2024        s/Kimberly G. Altman
Detroit, Michigan              KIMBERLY G. ALTMAN
                            United States Magistrate Judge

**<u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of

21

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 11, 2024.

s/Carolyn M. Ciesla_____
CAROLYN M. CIESLA
Case Manager
